UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DARIUSZ MELNAROWICZ and<br>BARBARA MELNAROWICZ,<br><br>Plaintiffs,<br><br>v.<br><br>PIERCE & ASSOCIATES, P.C.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 14 C 07814<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Dariusz and Barbara Melnarowicz, a married couple, took out a mortgage loan, bought a home, fell behind on their payments, and were sued by their lender. Pierce & Associates represent the lender in that action, which is a foreclosure case. After the foreclosure action was filed, Dariusz filed for bankruptcy. One aspect of bankruptcy is that it stays all litigation against the debtor. Thus, the foreclosure case should have come to a halt. It did not. Pierce, despite knowing about the bankruptcy case, served the Melnarowiczes with a "case-management conference" notice in the foreclosure case. After receiving the notice, the Melnarowiczes sued Pierce here in federal court.

They contend that by sending the notice in spite of the bankruptcy stay, Pierce violated the Fair Debt Collections Practices Act.[1] The notice, they say, was misleading because it implied that the foreclosure case would continue when,

---

[1] The Court has subject-matter jurisdiction under 28 U.S.C. § 1331. Citations to the record are shown as "R." followed by the docket number and page or paragraph number.

because of the bankruptcy stay, it could not legally do so. After limited discovery, the parties filed cross-motions for summary judgment. The Melnarowiczes's will be granted, and correspondingly, Pierce's denied.

## I. Background

Dariusz and Barbara Melnarowicz took out two mortgage loans from PNC Bank to buy a house. R. 32, Pierce's Rule 56.1 Statement ¶¶ 7-9.[2] Years later, the Melnarowiczes apparently fell behind on their payments because Pierce & Associates, P.C., a law firm in the business of debt collection, filed a foreclosure action on PNC's behalf against the Melnarowiczes. *Id.* ¶ 10. About a month later, Dariusz Melnarowicz filed a Chapter 13 bankruptcy petition. *Id.* ¶ 12. As soon as Dariusz filed his petition, a bankruptcy stay went automatically into effect. 11 U.S.C. § 362(a)(1). The stay was and is "applicable to all entities" and "operates as a stay … of … the … continuation, including the issuance or employment of process, of a judicial, … proceeding against the debtor that was … commenced before the commencement of the" bankruptcy case. *Id.* The stay also applies to proceedings against Barbara. 11 U.S.C. § 1301(a).

Pierce was aware of the bankruptcy petition. Pierce's Rule 56.1 Statement ¶¶ 14-17. After it became aware of the Melnarowicz bankruptcy, Pierce served on the Melnarowiczes a "Notice of Initial Case Management Conference" in connection with the foreclosure case. *Id.* ¶ 24. Based on that notice, the Melnarowiczes filed this case. R. 1, Compl. At a status hearing, the parties asked the Court to "suspend

---

[2]The material facts are undisputed. The Court refers to Pierce's Rule 56.1 statement admitting the material facts as stated by the Melnarowiczes.

2

discovery" and proceed to cross-motions for summary judgment on liability. R. 39, Hrg. Trans. at 2:9-18.

At the status hearing, it was understood that Pierce's bona fide error defense would not be part of these summary judgment motions. *Id.* at 2:19-4:20. Nonetheless, the Melnarowiczes attacked Pierce's bona fide error defense in their motion for summary judgment. R. 27, Melnarowicz Br. at 9. The Court has already denied that part of the Melnarowicz's motion. R. 42, July 23, 2015 Minute Entry. Now the Court turns to the parties' remaining arguments.

## II. Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence" at trial, Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of*

*Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Standing

Before turning to the liability arguments, the Court must address the Melnarowiczes' standing to sue. Pierce argues that the Melnarowiczes lack standing because they have suffered no injury in fact. R. 31, Pierce's Resp. Br. at 8-10. But under current Circuit law, this argument must be rejected. "Congress does have the power to 'enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.'" *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) (rejecting defendants' "no injury in fact" standing argument alleging "technical violation" of federal statute). This rule applies to Fair Debt Collection Practices Act cases like this one. *See Matmanivong v. Nat'l Creditors Connection, Inc.*, 2015 WL 536635, at *3 (N.D. Ill. Feb. 9, 2015) (citing *Sterk*) ("[T]he FDCPA creates legally protected interests, the violation of which constitutes an injury in fact."). That defeats Pierce's argument, for now.

It is worth noting that Pierce's argument is now before the Supreme Court. *Spokeo, Inc., v. Robins*, 135 S. Ct. 1892 (2015) (granting petition for certiorari). The question presented in *Spokeo* is "[w]hether Congress may confer Article III standing

upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute." Pet. for Cert., *Spokeo, Inc. v. Robins*, No. 13-1339, at i, *available at* http://sblog.s3.amazonaws.com/wp-content/uploads/2014/05/13-1339-Spokeo-v-Robins-Cert-Petition-for-filing.pdf. If the Supreme Court answers this question in Spokeo's favor, then the opinion might well overrule *Sterk*. But, if and until that day, this Court must follow the current rule in this Circuit. Assuming an outcome favorable to Pierce in *Spokeo*, the parties will need to address the issue again to determine whether, without *Sterk*, the Melnarowiczes alleged "actual injuries" that count as injuries-in-fact sufficient to confer standing. *See* R. 36, Melnarowiczes' Reply Br. at 6 ("Plaintiff has suffered minor actual damages … .").

**B. Liability**

Moving on to the merits, the Fair Debt Collections Practices Act makes liable "any debt collector who fails to comply with any [of its] provision[s]." 15 U.S.C. § 1692k(a). Pierce concedes that it is a debt collector, Pierce's Rule 56.1 Statement ¶ 4, so the question becomes whether it failed to comply with any of the Act's provisions when, despite the bankruptcy stay, it mailed to the Melnarowiczes the case-management conference notice. The sending of the notice did violate the Act. Section 1692e, relied on by the Melnarowiczes, Melnarowicz Br. at 2, 4-5, provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C.

§ 1692e. "This is a broad prohibition." *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). And it makes it "improper under the [Act] to imply that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass." *Id.* at 825. That is exactly what happened here. The notice is "improper" because it "implies" that the foreclosure suit would continue "when, legally," that "cannot come to pass" because of the bankruptcy stay.[3]

*Lox* illustrates this principle. There, a debt collector sent a letter to a debtor. The letter "warn[ed]" the debtor "that failure to pay his debt could lead to a lawsuit [and] that if [the creditor] was successful in his lawsuit, [the debtor] could be ordered by the court to pay … attorney fees." *Id.* at 820. But under Illinois law and the governing contract, there was no way to make the debtor pay fees. *Id.* at 823-24. So the letter implied that the debtor might have to pay attorneys' fees when, as a matter of law, it was impossible. *Lox,* 689 F.3d at 825-26. Relying on the above principle—that implying legally impossible things could happen is a violation of the Act—*Lox* reversed the district court's grant of summary judgment to the debt collector. *Id.* at 824-26.

---

[3]It is possible for a litigant prosecuting a case against a debtor in bankruptcy to obtain relief from the automatic stay. 11 U.S.C. § 362(d). But Pierce did not argue that this possibility changes the liability analysis. And under *Lox* it should not. There, the impossible outcome was the debtor owing attorneys' fees to the creditor at the end of a collections lawsuit. *Lox*, 689 F.3d at 820. That outcome is impossible in the sense that Illinois law and the contract did not provide for fee shifting. *Id.* at 823-824. But it is not impossible in the sense that, had the debtor or his attorney done something sanctionable, attorneys' fees could not have been shifted. *See, e.g.*, Ill. Sup. Ct. Rule 137 (allowing "a reasonable attorney fee" as a sanction for frivolous filings). On the record in this case, getting around the bankruptcy stay, like imposing attorneys' fees as a sanction in *Lox*, was not a realistic possibility (nor had Pierce actually taken any steps whatsoever to lift the stay), so implying that the state-court case was still being litigated was indeed "false or misleading" under the Act.

6

This principle also appears in debt-collection cases that, like this one, involve bankruptcy. The Seventh Circuit recognizes that the Act is violated when debt collectors' actions imply that certain things are possible when, because of a bankruptcy stay or discharge, they are not. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004) ("A demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts that money is due, although, because of the automatic stay (11 U.S.C. § 362) or the discharge injunction (11 U.S.C. § 524), it is not."); *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) ("Hyman should not have received a collection letter from T & K because she had filed for bankruptcy."); *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 993-94 (7th Cir. 2003).

### C. Pierce's Counterarguments

So Pierce violated the Act by sending the notice. And its remaining arguments, of which there are two, do not convince the Court otherwise.

### 1. The Unsophisticated Consumer

First, Pierce argues that even if the notice implies that the foreclosure action will continue in spite of the bankruptcy stay, the notice still does not violate the Act because that implication is not strong enough to mislead the unsophisticated consumer. Pierce's Resp. Br. at 7-8. Pierce is right that the Act does not forbid statements that, though technically false or misleading, would not mislead the "unsophisticated consumer." *Lox*, 689 F.3d at 822 (collecting cases); *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645-46 (7th Cir. 2009) ("If a statement

7

would not mislead the unsophisticated consumer, it does not violate the FDCPA— even if it is false in some technical sense."). The "unsophisticated consumer" standard is an objective one used to evaluate statements or actions that allegedly violate § 1692e. *Id.* The "unsophisticated consumer may be uninformed, naïve, and trusting," but is not "a dimwit," "has rudimentary knowledge about the financial world, and is capable of making basic logical deductions and inferences … ." *Id.* (internal citations and quotation marks omitted).

Pierce says that "[w]hen the circumstances of this violation are put in perspective, no least[-]sophisticated consumer would believe they were being asked to satisfy an outstanding consumer debt by receipt of a Notice of this kind—one that asks for no action on the part of the recipient." Pierce's Resp. Br. at 7-8. There are two problems with this argument. First, Pierce does not put the "circumstances of this violation … in perspective" or identify what it thinks those circumstances are. Nor does Pierce compare this case to any others. Pierce just says so. Standing alone, cursory treatment like this is enough to reject the argument. *See Mallett v. Bd. of Educ., City of Chicago*, 2005 WL 1563227, at *9, n.7 (N.D. Ill. July 5, 2005) ("[S]uch a 'perfunctory and undeveloped' argument constitutes waiver.") (collecting cases).

The second problem is that the test is actually satisfied. An unsophisticated consumer, having filed for bankruptcy and thus entitled to a stay, would be misled by the notice into thinking that the foreclosure case would continue. After all, that is exactly what the notice says will happen. Pierce is arguing, plainly speaking, that unsophisticated consumers have so much knowledge of bankruptcy law and

8

bankruptcy stays in particular—and so much confidence in that knowledge—that they would just ignore the notice. That is a chain of reasoning that does not properly view the circumstances from the perspective of an unsophisticated consumer.

Not that Pierce's argument is without superficial appeal. After all, Pierce just sent a court-mandated form notice to an adversary in litigation. R. 44, Pierce's Reply Br. at 2 (implying that what happened in this case is "what should have happened"). But the Seventh Circuit has long recognized that "the Act reaches lawyers engaged in litigation." *Jenkins v. Heintz*, 25 F.3d 536, 539 (7th Cir. 1994) *aff'd*, 514 U.S. 291 (1995). And the big problem is that legal notices can apply serious pressure to a litigant, particularly an unsophisticated one. The Act has long recognized that legal process, like the notice here, has sway in the minds of consumers. *See* 15 U.S.C. § 1692e(13) (prohibiting "[t]he false representation or implication that documents are legal process"); *Tolentino v. Friedman*, 833 F. Supp. 697, 701 (N.D. Ill. 1993) *aff'd*, 46 F.3d 645 (7th Cir. 1995) (recognizing that debt collector's notice gained force because it was packaged with "the summons and complaint"). Pierce downplays this aspect of the case too much.

Pierce is right that only "material" violations of the Act generate liability. *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009). But it is wrong to say that this violation is immaterial. Practically speaking, a notice like this one could lead an unsophisticated consumer to believe that his or her bankruptcy had failed to save them from impending foreclosure. That mistaken

9

belief could then lead the consumer to make all sorts of poor financial decisions, including negotiating a poor resolution to the foreclosure case. Outlawing practices with that potential is well within the ambit of the Act. *See Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997) ("The primary goal of the FDCPA is to protect consumers … .").

### 2. In Connection With

Second, Pierce argues that sending the notice did not violate the Act because the notice it sent in connection with its foreclosure lawsuit is not "in connection with the collection of a debt." Pierce's Resp. Br. at 3 ("[P]laintiffs fail to establish that Pierce was attempting to collect a debt by sending the Notice."). Pierce is again right that, to win on its theories under § 1692e, the Melnarowiczes must show that the notice was sent "in connection with the collection of any debt." 15 U.S.C. § 1692e; *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010) ("[T]he communication by the debt collector that forms the basis of the suit must have been made 'in connection with the collection of any debt.'"). But the notice sent here was in connection with the collection of a debt, and *Gburek* shows why.

In *Gburek*, the debt collectors sent the debtor two letters about the debtor's mortgage. *Gburek*, 614 F.3d at 386. The debtor was close to foreclosure and both letters offered to discuss "debt-settlement options" and "foreclosure alternatives." *Id.* Neither sought payment. *Id.* The district judge granted the debt collectors' motion to dismiss, finding that the letters were not made in connection with the collection of a debt because, in part, there was no demand for payment. *Id.* at 381-

382 ("The district court granted Litton's motion to dismiss, concluding that Litton's conduct did not fall within the scope of the FDCPA because the letters Gburek received did not contain a demand for payment."). *Gburek* reversed. *Id*. at 382. The letters were "an offer to discuss … repayment options, which qualifie[d] as [] communication[s] in connection with an attempt to collect a debt." *Id*. at 386. Same here. Among other things, the notice here invited the Melnarowiczes to look into the "Mortgage Foreclosure Mediation Program." R. 26-11, Exh. K, Not. of Initial Case Management Conference ("If you are interested in participating in the Mortgage Foreclosure Mediation Program, you should come to court."). This kind of invitation to resolve a debt qualified in *Gburek* and it qualifies here.

And even without the invitation that makes this case so like *Gburek*, the notice here would qualify as a communication made in connection with the collection of a debt. "[T]he purpose and context of the communications—viewed objectively—are important factors" in deciding whether they qualify. *Gburek*, 614 F.3d at 385. Here, the context is a foreclosure lawsuit. And the purpose, at least in part, is to prosecute that lawsuit and thus, to foreclose and make good the debt. Neither *Gburek* nor any case cited by Pierce holds that a communication made in an ongoing collections lawsuit falls outside the Act's scope.

A final point. One theme of Pierce's briefing is that it was between a rock and a hard place. Pierce says that it faced a rock—the bankruptcy stay required it to halt action in the foreclosure case—but the other side was a hard place—a state-court rule supposedly compelled Pierce to send the offending notice. According to

11

Pierce, the firm could not comply with both. This theme is not compelling for several reasons. First, if there is a conflict between federal law and a state law, then the federal law wins. U.S Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States … shall be the supreme law of the land … anything in the constitution or laws of any state to the contrary notwithstanding."). Pierce would know that and so would the state-court judge. It is highly unlikely that Pierce or its client would have been faulted by the state court (which anyway is not Pierce's adversary) for not sending the notice in the face of the stay. Second, Pierce could have, but did not, ask for relief from the notice rule. Pierce could have notified the state court of the stay and filed a motion seeking to be excused from the notice rule. Or Pierce could have sought relief from the stay in the bankruptcy court. 11 U.S.C. § 362(d). There is no hint that Pierce took either step. Pierce's suggestion that enforcing the Fair Debt Collections Practices Act against it here is tantamount to "us[ing] the FDCPA to monitor state court and state requirements," R. 31, Pierce's Resp. Br. at 7, is therefore rejected.

## V. Conclusion

The Melnarowiczs' motion for summary judgment, R. 25, is granted as to liability but denied as to the bona fide error defense. Pierce's summary judgment motion, R. 31, is denied. With liability established, the parties must confer on how to move forward in the case, including what is needed to finish litigating the affirmative defenses, what is needed on damages, and whether to restart settlement

12

negotiations). These topics will be discussed at the next status hearing, which is September 3, 2015.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 17, 2015